Good morning. If it pleases the Court, Jacob Zamora on behalf of the appellant, Recordon & Recordon. Since this, since the trial court ruling in this case, the Ninth Circuit, this court has refined the rule as it relates to jurisdiction and Internet website. And whether an Internet website would confer jurisdiction in a venue other than where the defendant is located. Brayton Purcell had presented a case which appears to be one of the most recent cases of, I think it's Borchetto v. Hansen, which we believe also supports Recordon & Recordon's position that the trial court erred in denying their motion to dismiss or to transfer venue to the Southern District of California. As the Court knows, the facts of this case that were presented to this Court is that Recordon & Recordon is a small husband-and-wife law firm out of San Diego, California, who prepared or had prepared on their behalf by a third party a website for a portion of their law practice that they were considering expanding into. And based on that website, Brayton Purcell conducted a search of the Internet and located the website. It was later determined, or later asserted by Brayton and Purcell, that that website had infringed their website. They instituted an action in the Northern District of California, at which time Recordon & Recordon filed their motion to dismiss based on lack of jurisdiction, or in the alternative, a change of venue to the Southern District. Well, let me just ask a question here. Yes, ma'am. Recordon allegedly infringed Purcell's copyright knowing that Purcell was a resident of the Northern District of California. Why isn't this sufficient for jurisdiction under the Bancroft case? The question of whether Recordon & Recordon knew whether Brayton and Purcell was in the Northern District was a question of fact. We understand what Bancroft holds. However, since Bancroft, there have been several other cases that deal specifically with the Internet that would hold that jurisdiction would not be a proper in the Northern District. Bancroft, as our understanding, did not deal with an Internet website. The seminal case, as the Court knows, was Zippo that set a sliding scale. That's not something that was addressed in Bancroft. This was an Internet website. This is something that has developed since the holding in Bancroft. But this Court or the Zippo Court indicated that they would prepare a sliding scale to determine whether jurisdiction would be appropriate where the plaintiff resides versus the defendant or in a forum other than where the defendant resides. We believe that that would be why Bancroft would not be appropriate, Your Honor. Well, but okay. But I thought the question related to whether or not they knew that they were in Northern California. Pardon? I thought the question related to whether or not they knew that the people with the website that they were taking the content of were in Northern California. How could they not know that when they were looking at the website? That was the issue at the trial court. Recorded and recorded never looked at the website. They hired a third party. Yeah. Well, that's the third party's the agent. Agent. That's what I. Correct. I don't understand how you can say they didn't know. The pleading is that they knew. So assume they knew that they were in California. So what? Then if we could, Your Honor, let's take a look at Pebble Beach. In Pebble Beach, I think that addresses the Court's question. The Pebble Beach case, the alleged infringer was overseas. That individual had lived in Carmel, California, and knew of Pebble Beach and knew its reputation, nevertheless used their name. They knew. But the Court found that even though that they had infringed and that they knew that they were in that district, that was still insufficient to confer jurisdiction. Well, my understanding is that the people who were infringing had a little bed and breakfast, and it was next to a beach in England named Pebble Beach. Correct. And as the Court remembers, in Pebble Beach, they argued that that would still harm them in their forum, in their forum, which was the Northern District of California. The Court came back and said that's still not sufficient, even though that's different. Now, I understand what they're saying. They named Pebble Beach because it was being used by Pebble Beach. They used it because their name was Pebble Beach. And there's a difference between going into a place and taking property that you know is going to have an effect there, and simply doing something in a jurisdiction that indirectly may have some effect. The latter is not targeting. That's correct, Your Honor. And if I'm understanding the Court's question correctly, it still wants to know about report on and report on knowing about Brayton and Purcell in the Northern District of California. And again, what we would ask the Court to consider is just assume that they did know. Assume that they did know, how did they injure them in Northern California? Assuming that they did know, how did they injure them? Assuming, let's get over whether they knew. That's what I'm saying, Your Honor. They did injure them in California, and that's in the Northern District, and that's our argument. There was no effect in the Northern District. There's none pled, is what you're saying. There was none established by Brayton and Purcell at the trial court. All right. Is there any pleading that there was any injury that occurred in Northern California? Brayton and Purcell alleged an injury. What injury? Where are they? Where is who, Your Honor? Brayton and Purcell. Brayton and Purcell are located in the Northern District of California. Okay. Yes. Who's on first base? No. What's on first base, Your Honor? All right. Is there any injury alleged that occurred in Northern California? Brayton and Purcell. What is it? That was the question. Their alleged injury was the actual infringement, that they had taken property from the website. Okay. Like the Schwarzenegger case. Correct. They took his name, his address. And that in and of itself was the injury. So in this case, Brayton and Purcell alleged that as a result of making this copy, you took time and effort and work that we had put into this website, and you stole it. In other words, recording and recording didn't have to create anything or they didn't have to expend the money that Brayton and Purcell did. That was Brayton and Purcell's argument at the trial court. Are you saving time for rebuttal? I will, Your Honor. I will save two minutes for rebuttal. You've got two minutes. Thank you, Your Honor. I will turn it over to Appelli. Very kind of you. Good morning, Your Honors. David Firmino on behalf of Brayton Purcell. May it please the Court. We believe that the Columbia — excuse me, the — I'll start again — that the district court's opinion is absolutely correct, and that is that the — there are two cases, really, that the Court needs to discuss in order to reach a conclusion that Brayton Purcell's website and the material therein was infringed. And that is the Columbia — excuse me. Pictures. I'm sorry? Columbia Pictures. Yes. Thank you. I'm having a momentary synaptic problem. The Columbia Pictures decision — We all have them. All the time. I'm sorry. The Columbia Pictures decision really is directly on point here. Judge Chen's opinion is correct in that the decision, in that it involves a willful copyright infringement, is directly on point. And as a result, the only thing that needs to be found here is that Brayton Purcell's copyrighted material was, in fact, taken without permission by Recordon and Recordon. Can you tell me how you distinguish that from Schwarzenegger, where his right to use his name was taken and used by somebody else? Yes, Your Honor. I think that the — first of all, I think as an initial — the district court got it right in that it said that if you — if we're saying that Columbia Pictures didn't establish a per se rule, which, by the way, I would not concede. I think, in fact, it does. But assuming it didn't, then you — there are differences. And one of the differences is the kind of — it is the tort that is at issue in the case. And that is, in Schwarzenegger's case, it was using another's image or — for financial gain. That's a difference in terms of — You're taking his property that he's entitled to, which was in California — Correct. — and using it in Ohio illegally. Correct. There's a difference. The difference is that here they took a copyright property right improperly and used it in another venue. That's correct. Well, if I understand it, aren't — your client is a law firm? That's correct, Your Honor. And the plaintiff is a law firm? Are they — your adversary client is a law firm? That is correct. And you're in this — engaged in the same kind of business? No, Your Honor. Well, yeah. Explain that for me. Brayton & Purcell is a law firm that's headquartered in Nevado, California. And it does a variety of plaintiff's tort litigation. And it was, at the time, considering and had put on its website that it was taking cases involving elder abuse. So that was the copyrighted material at issue in this case. And Recordon & Recordon had developed a website in which they were attempting to attract clients, potentially in this area. And they, we allege, took copyrighted material directly from our website verbatim and copied it into the website that they had placed on the Internet. You have no allegation, do you, that they were competing in Northern California, that they were — it's a small, two-person firm in San Diego. You have no — they never had a case in Northern California. That is — that is their argument, Your Honor. No, that's their affidavit. That's correct. And you have no allegation that you were injured in Northern California, other than by the taking of the copyright? That's correct, Your Honor. Well, the only — Well, that's — it's correct that there's no allegation that you were injured in any way other than the taking of the copyright. But the — That's correct. That's factually correct, yes, Your Honor. Well, it's not just the — if I understand it, it's not just the taking of the copyright. It's the putting it on the Internet. That is — that is — that is correct. It is the — it is the act of putting — it's not just the reaching in and taking. It's the fact that they placed it on the Internet for anyone to see. And in this — and that's really the difference in this case. In Schwarzenegger, if I can get back to Judge Reinhardt's question, we have a series of advertisements that are placed in a newspaper in another State having nothing to do with Governor — then Arnold Schwarzenegger's persona. In fact, the two were completely unrelated. How anyone could confuse the — the use of Schwarzenegger's name with the attempt to sell these automobiles, on the one hand, with, in this case, something completely different, which is these are two law firms. It could easily be that someone — But, nevertheless, you don't allege that they were seeking business in Northern California. You don't allege the — any — there might be a loss of clients. There's never a mention of Northern California clients, nor that they intend to do business in Northern California. No, Your Honor. But I think that that's — that's where — where — where opposing counsel was erasing the issue of the Internet. That's where this case — where that becomes relevant. And that is, someone trolling the Internet for information about prospective law firms would come upon this case if they were in San Francisco trolling the Internet or if they were in San Diego or if they were in any other part of the State. And that's what makes this activity — So somebody searching the Internet for elder abuse law firms would come up with — in California would come up with — or in the West would come up with the same material for both these law firms. That's correct. Or they might not get to the material placed in the Brayton Purcell website. But there's no allegation that they were seeking business in Northern California. And it's not very likely that Northern Californians who have an elder care problem are going to go to a two-person firm in San Diego, is it? Well, Your Honor, I think that — There's no allegation. I mean, we have to stick with the allegations. I think the district — You say nothing about that they were seeking business in Northern California. That's correct. But I think the district court opinion touches on this, Your Honor, and I think it does so correctly, which is to say that the nature of law practice is that it is much more fluid than the kind of business activities that are discussed in Schwarzenegger and in — Yes. If you were Gibson, Dunlap, Crutcher, it might be different. You might be seeking business all over the country. With an elder care new practice by a two-man firm in San Diego that has never had a client in Northern California since it existed, it's not very likely that it's seeking business in Northern California. It's trying to develop a practice near San Diego. Although, if it goes on the Internet, all of a sudden your two-man practice may have a lot of people seeking your services. I mean, I think this is a — the Internet is what makes this one distinguishable, isn't it? I think that's correct, Judge Nelson. I think that that's — And I thought the idea was you have this super-duper Internet website for elder abuse, and you have a unique product that you are marketing in Northern California, and then somebody else in Northern California who would look to you says, oh, my gosh, here's somebody else who's got exactly the same thing. They're down in San Diego. Maybe this isn't so unique after all. Maybe this is just a, you know, kind of a ordinary kind of service here. We could go to all kinds of people together. I think, Judge Schroeder, that's also correct. I don't — I don't disagree with that point. We don't disagree, but you didn't allege it. That's the point. You may have some very good lawyers on the bench who can tell you what you should have alleged, but we're stuck with looking at your allegations. Do we have a heightened pleading here? Let your — yes. It's supposed to look at the allegations to see how you are targeted or injured. And I must say, I don't see in your complaint, nor did you file an affidavit, but unlike the opponents, but in your complaint, I don't see anything that suggests that you were targeted in Northern California. Your Honor, I — I see the Court's point. I want to just — I want to focus on the fact that I believe that the real — the real issue here that needs to be resolved is whether or not Columbia Pictures controls this case, and — I agree with you. That's the real issue. And I believe that it does. I believe that Judge Chen got it right, and I believe that it does control, and that the — the Schwarzenegger opinion notwithstanding, I think that's the case that this Court should find answers the question as to whether there is properly jurisdiction in this — in this district. And with that, I would submit unless there are any further questions. I don't think there are any. Thank you. Thank you. Thank you. The issue is whether Columbia Pictures is the case that should decide the issue that's now before the Court, and recording and recording believes that Columbia Pictures is readily distinguishable from this case.  The defendant had extensive and specific direct contacts with the plaintiff in California. It's my understanding also, then, in Columbia that there was a contract that was signed in California. They had a substantial economic benefit, or if I may back up, the defendants had a substantial economic benefit by doing business in California with Columbia Pictures. Again, what recording and recording believes is that Columbia Pictures does not deal with the Internet. The cases that deal with the Internet are CyberCell. It was decided by this Court. Pebble Beach. Those are the cases that we ask the Court to consider relative to this case and how it's decided. If Columbia Pictures were to be the controlling case, then any small business would be subject to foreign jurisdictions based on Columbia Pictures or based on the argument that Apelli would like this Court to decide. And you're not relying on Schwarzenegger, either? Schwarzenegger isn't an Internet case, either. It is not an Internet case. It is not an Internet case, either, Your Honor, and we believe that the facts of Schwarzenegger could readily be distinguishable from this case as well. The cases that we are deciding or we are asking the Court to consider are those that, in fact, deal with the Internet, because that's what was at issue here. The issue was a web page that was developed on behalf of a recorder and a recorder and by a third party and placed on the Internet. And does that by itself subject record-on and record-on to jurisdiction in a forum other than where they're located? And with that, Your Honor, we would submit. Let me just ask one question about the amended complaint. On page 8 of the amended complaint under item 38, they say, as a result of the copyright infringement by the defendants, Brayton Powell has suffered and will continue to suffer irreparable injury to its business reputation and goodwill and has lost sales and profits in an amount not yet fully ascertained. Brayton Powell's remedy at law is not by itself adequate. Do you feel that that is not an allegation of damages? We do believe it's an allegation. Unfortunately, Your Honor, what we would submit would be an unfounded allegation. It doesn't matter whether it's unfounded. Does it say that they suffered that loss in Northern California? It does say that, Your Honor. Now, where does it say? Oh, God. It says Judge Nelson read to you what they say. Does it say in Northern California in what she read to you? It does not. Thank you. That's a better answer. Any other further questions? No. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is
judges: Schroeder, Nelson, Reinhardt